UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

GEORGE S. JAGHAB,

                        Debtor.
----------------------------------------------------------------x
ANDREW M.THALER, Chapter 7 Trustee of the
Bankruptcy Estate of George S. Jaghab,

                        Plaintiff,

      - against -

GJ & JF Realty Holdings, Inc.,
Johnny Flores and
BR Realty Systems Inc.,

                        Defendants.
----------------------------------------------------------------x

Case No. 8-15-73166-reg

Chapter 7

Adv. Proc. No. 8-16-08127-reg

## MEMORANDUM DECISION

        Andrew Thaler ("Trustee"), the Chapter 7 Trustee in the case of George S. Jaghab (the

"Debtor") commenced this adversary proceeding seeking various forms of relief against Johnny

Flores ("Flores"), GJ & JF Realty Holdings, Inc. ("GJ & JF") and BR Realty Systems, Inc. ("BR

Realty"). The main purpose of the adversary proceeding is to recover, for the benefit of the

Debtor's creditors, a portion of the stream of promissory note payments from BR Realty to

Flores on the basis that the payments belong to GJ & JF, not Flores.  Because the Debtor is a

50% shareholder of GJ & JF, the Trustee asserts that the Debtor's estate has a right to 50% of the

note payments.  Flores opposes the relief requested by the Trustee because he claims to own

100% of the shares of GJ & JF.  As the 100% shareholder of GJ & JF, Flores claims that he is

entitled to receive all of the payments made by BR Realty under the note.

After a careful review of the record and applicable law, the Court concludes that Flores owns 50% of the shares of GJ & JF, and that as of the date the petition was filed, Flores only had an unperfected lien on the Debtor's shares of GJ & JF.  As a result, the Trustee, armed with the status of a hypothetical lien creditor under 11 U.S.C. § 544(a), takes the Debtor's 50% stock ownership in GJ & JF free of Flores's unperfected lien.  While the Trustee is a 50% shareholder of GJ & JF, applicable law imposes limitations on the Trustee's rights as a shareholder of GJ & JF.  The Trustee cannot demand turnover of the note payments because they belong to GJ & JF, a non-debtor.  In addition, the Trustee cannot avoid the payments made by BR Realty to Flores under the note because the funds in question are not property of the Debtor's estate.  The Trustee must take further steps before the Debtor's estate is entitled to recover any payments already made under the note, or the stream of payments still due and owing to GJ & JF.  Therefore, the only relief the Court can grant under the Trustee's complaint is to enter a declaratory judgment that the Debtor's estate owns 50% of the shares of JG & GF.  The remainder of the complaint is dismissed.

### *Procedural History*

On July 26, 2015 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 7, and the Trustee was appointed.  On August 18, 2016, the Trustee filed the Complaint.  On August 31, 2016, BR Realty filed an Answer.  On September 10, 2016, Flores and GJ & JF filed a joint Answer.  On March 30, 2017, the Trustee filed a motion for partial summary judgment as to the first, third, fifth and sixth causes of action.  On May 1, 2017, Flores and GJ & JF filed opposition to the motion for partial summary judgment.  A hearing was held on July 10, 2017 at which the motion for partial summary judgment was denied.  A final pretrial conference

was held on November 29, 2017, at which hearing the parties agreed to forego an evidentiary hearing and to submit stipulated facts and a briefing schedule. On December 15, 2017, the parties submitted stipulated facts. On December 27, 2017, the Trustee submitted a brief. On January 17, 2018, Flores and GJ & JF submitted a brief. On January 24, 2018, the Trustee submitted a reply brief and the matter was marked submitted.

### *Facts*

The parties have stipulated to certain facts, and the Court has reviewed the evidence submitted by the parties to make the following findings of fact. As of March 13, 2015, the Debtor and Flores were each 50% owners of GJ & JF. GJ & JF did not maintain a stock ledger or similar records to indicate stock ownership. No GJ & JF stock certificates were issued to either the Debtor or Flores. Flores is in possession of the blank stock certificates. The tax returns for GJ & JF for 2013 and 2014 indicate that the Debtor and Flores each owned 50% of the shares of GJ & JF. The Debtor was President of GJ & JF from 2013 to at least March 13, 2015. To date, GJ & JF has no creditors.

On May 15, 2013, the Debtor executed a Promissory Note ("2013 Note") dated May 15, 2013 in favor of Flores. (Plaintiff's Ex. 1). Pursuant to the 2013 Note the Debtor became indebted to Flores in the amount of $125,000. The 2013 Note states that the "principal is payable [to Flores], without interest, in equal monthly installments of Two Thousand Eighty Three and 33/100ths Dollars ($2,083.33) each, commencing **on the first day after profits are realized** and monthly thereafter until paid in full." (Plaintiff's Ex. 1) (emphasis added). The 2013 Note also provides as follows:

> [Flores] agrees that [Flores] will look solely to the property more particularly described in the Security Agreement, and any other collateral given for the security of the indebtedness evidenced by this Note or secured by the Security Agreement, and any other collateral given for security of the indebtedness evidenced by this Note or secured by the

Security Agreement, and that [Flores] will not seek or take any personal or deficiency judgment against [the Debtor] or any partner, shareholder, officer or principal of [the Debtor], disclosed or undisclosed, with respect to such indebtedness or performance; provided, however, that nothing herein shall be deemed to affect otherwise the rights of the holder of this Note to proceed against the property described in the Security Agreement or other collateral as in the Security Agreement or elsewhere provided.

Plaintiff's Ex. 1, ¶ 4.

In connection with the 2013 Note, the Debtor and Flores entered into a Security Agreement ("Security Agreement") dated May 15, 2013 (Plaintiff's Ex. C), and Stock Pledge Agreement (Plaintiff's Ex. D) wherein the Debtor agreed to pledge his shares in GJ & JF to Flores.  Pursuant to the Security Agreement, the Debtor was to keep the stock at the Debtor's place of business and was to execute and deliver any financing statements necessary to protect the security interest granted to Flores.  Included among the events of default under the Security Agreement are the following:

1)  Default in the payment of any amount due under the 2013 Note;

2)  Failure to observe any covenant, agreement, term or provision in the Security Agreement; and

3)  Providing a false representation or warranty in connection with the 2013 Note or the Security Agreement.

(Plaintiff's Ex. C).

Upon the occurrence of an event of default under the Stock Pledge Agreement, Flores had the right to foreclose the security interest in the GJ & JF stock, to take possession of the GJ & JF stock, and to sell, lease or otherwise dispose of the GJ & JF stock.  (Plaintiff's Ex. C)

Pursuant to the Stock Pledge Agreement, the Debtor pledged his shares in GJ & JF to Flores to secure the Debtor's obligations under the 2013 Note.  The Stock Pledge Agreement

also states that Flores loaned the Debtor $125,000.00 in connection with the purchase by GJ & JF of real property ("Property") located at 226 Main Street, Hempstead, NY. There is no evidence in the record that the loan was made to enable the Debtor to purchase GJ & JF stock from Flores. While the events of default set forth in the Stock Pledge Agreement and the Security Agreement mirror each other, the Stock Pledge Agreement and the Security Agreement with respect to how the GJ & JF stock pledged by the Debtor is to be handled. The Stock Pledge Agreement directs that the shares pledged by the Debtor are to be deposited with the law firm of Goldstein & Rodriguez, LLP, until there is a default under the terms of the Stock Pledge Agreement. (Plaintiff's Ex. D). This provision conflicts with the Security Agreement, which provides that the pledged shares are to be kept at the Debtor's place of business. Both of these provisions conflict with what actually took place, because no stock certificates were ever issued to the Debtor or Flores. The parties stipulate that there was no escrow agreement entered in connection with the Security Agreement or the Stock Pledge Agreement. A UCC financing statement was never filed with the New York Department of State in connection with the 2013 Note and related Security Agreement and Stock Pledge Agreement.

At or around the date the 2013 Note, the Security Agreement and the Stock Pledge Agreement were executed, GJ & JF purchased the Property. The purchase price paid by GJ & JF for the Property is not set forth in the stipulated facts. The Property appears to have been the only asset of GJ & JF. It is undisputed that the Debtor made no payments to Flores in repayment of the 2013 Note. It is also a matter of record that the 2013 Note is non-recourse, that Flores may only look to the collateral pledged by the Debtor to satisfy the obligations under the 2013 Note, and that monthly payments are only due if and when "profits are realized." The 2013 Note does not clarify the term "profits," but given that the collateral pledged for the Note are the shares in

GJ & JF and the nature of the overall transaction, it appears that the payments referenced in the 2013 Note only become due if GJ & JF realizes a profit.

On March 13, 2015, GJ & JF sold the Property to BR Realty for $760,000.  The Debtor executed the contract of sale ("Contract of Sale") as President of GJ & JF.  (Trustee's Statement Regarding the Debtor's Interest in Stock, Ex. C).  On March 13, 2015, the Debtor, on behalf of GJ & JF, executed a deed transferring the Property to BR Realty.  (Trustee's Statement Regarding the Debtor's Interest in Stock, Ex. B). The Contract of Sale recites that the consideration for the sale was $65,000.00 by certified check to the order of GJ & JF, $237,482.81 pursuant to a note, and assumption of the existing mortgage on the Property, which had a balance of $457,569.19.[1]  In connection with the sale of the Property, BR Realty executed a note ("2015 Note") in the amount of $237,482.81 in favor of GJ & JF. (Stipulation of Facts, Ex. 1).  Based on the facts, the first point in time that GJ & JF could realize a profit was when it received the certified check from BR Realty for $65,000.00.  The record does not reflect whether GJ & JF ever received the $65,000. The 2015 Note lists BR Realty as the payor, and the payee is listed as GJ & JF "to the order of Johnny Flores."   (Plaintiff's Ex. A). The 2015 Note also directs that the monthly payments in the amount of $4,040.61 be paid "to the order of" Flores. The first payment on the 2015 Note was due on July 1, 2015, and the last monthly payment is due on June 30, 2021.

All payments made by BR Realty pursuant to the Note through the date of the commencement of this adversary proceeding were delivered to Flores.  The parties agree that the payments were made to Flores "on account of the debt the Debtor owes to Flores."   Statement of

---

[1] The whereabouts of the $65,000 down payment are not addressed by the parties.

Stipulated Facts, ¶35.  As a result, GJ & JF has not received any payment pursuant to the 2015 Note.

BR Realty executed an agreement with GJ & JF wherein BR Realty pledged its stock to GJ & JF to secure its obligations under the 2015 Note.  To date, Flores has received an unspecified amount from BR Realty as payment on the 2015 Note.  As of December 14, 2017, BR Realty has made one monthly payment on the 2015 Note in the amount of $4,040.61 that is being held in the escrow account of counsel to BR Realty, pursuant to the Court's directive.

On August 18, 2016, the Trustee filed the Complaint.  The Trustee asserts the following causes of action:

1. Against GJ & JF and Flores:  The Trustee seeks a declaratory judgment determining that the Debtor and Flores each have a 50% interest in the 2015 Note, either directly or as owners of GJ & JF.

2. Against BR Realty:  The Trustee seeks entry of a judgment directing BR Realty to provide an accounting of all payments made under the 2015 Note and directing BR Realty to turn over all payments due under the 2015 Note that are attributable to the Debtor's interest in the 2015 Note, either directly or as an owner of GJ & JF.

3. Against GJ & JF  and Flores:  The Trustee seeks entry of a judgment directing Flores and GJ & JF to provide an accounting of all payments received under the 2015 Note and to turn over all payments received attributable to the Debtor's interest in the 2015 Note, either directly or as an owner of GJ & JF.

4. Against Flores:  The Trustee seeks to avoid the Debtor's transfer/waiver of his interest in the 2015 Note as a preference pursuant to section 547, and to preserve the avoided transfer for the benefit of the Debtor's estate pursuant to sections 550(a) and 551.

5. Against Flores: As an alternative to the Fourth Cause of Action, the Trustee seeks to avoid each transfer from BR Realty to Flores under the 2015 Note as a preference made to an insider pursuant to section 547, and to preserve the avoided transfers for the benefit of the Debtor's estate pursuant to sections 550(a) and 551. The Trustee also seeks interest at 9%.

6. Against Flores: The Trustee seeks to avoid the transfers from BR Realty to Flores after the Petition Date as post-petition transfers pursuant to section 549, and to preserve the avoided transfers for the benefit of the Debtor's estate pursuant to sections 550(a) and 551. The Trustee also seeks interest at 9% on the judgment.

## *Discussion*

The Trustee's adversary proceeding is based on the premise that the Debtor has a direct 50% interest in the 2015 Note. In the alternative, the Trustee asserts that the Debtor's 50% interest in GJ &JF entitles the Debtor to a 50% interest in the 2015 Note. Flores and GJ & JF oppose the relief requested in the complaint on the basis that Flores owns 100% of the shares of GJ & JF, either because the Debtor's purchase of the shares is subject to rescission; or in the alternative, because Flores validly foreclosed its lien on the Debtor's stock interest in GJ & JF prior to the sale of the Property to BR Realty in 2015. Neither of these arguments are supported by the facts of the case or applicable law.

In order for the Trustee to prevail on the bulk of his claims, the Trustee must establish that the half of the stream of payments from the 2015 Note constitute property of the Debtor's estate. However, the Trustee is only entitled to whatever legal or equitable property interests the Debtor had as of the Petition Date. 11 U.S.C. § 541(a)(1). While federal law determines whether an interest claimed by the debtor in property is property of the bankruptcy estate,

property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Both the Debtor and Flores stipulate that as of the date that the 2013 Note was executed, they were each 50% shareholders of GJ & JF. The parties also stipulate that no certificates of stock were issued by GJ & JF. However, there is sufficient evidence to support a finding that the Debtor and Flores each owned 50% of the stock of GJ & JF, given that the tax returns of GJ & JF reflect the parties' ownership interests. *Blank v. Blank*, 681 N.Y.S.2d 377, 381-381 (3d Dept. 1998). As 50% shareholder of GJ & JF, the Trustee would be entitled to take certain actions to protect the estate's interest as a shareholder of GJ & JF, but he cannot "leapfrog" over GJ & JF to claim a 50% interest in the 2015 Note itself. The 2015 Note is an asset of GJ & JF, and is not property of the Debtor's estate. In sum, the Trustee cannot sue on behalf of GJ & JF at this point, and the corporate formalities of GJ & JF must be observed.

Flores's argument that he owned 100% of the shares of GJ & JF as of the Petition Date is not supported by the facts or applicable law. For Flores's legal arguments to succeed, he must establish that the Debtor had been divested of his 50% ownership in GJ & JF at the time the Property was sold to BR Properties. Flores alleges that there was a stock purchase agreement between the parties which is subject to rescission based on the Debtor's conduct. As a result, the Debtor has no legal right to assert a 50% ownership of the stock of GJ & JF. Flores' position is based on the false premise that Flores loaned the Debtor $125,000 so the Debtor could purchase the GJ & JF stock from Flores. There is no "stock purchase agreement" evidencing such sale, and the Stock Pledge Agreement specifically states that Flores made the loan to the Debtor in connection with the purchase of the Property by GJ & JF. Rescission of the 2013 Note and the Stock Pledge Agreement, which are the only relevant agreements in the record, would not put Flores in the position of owning 100% of the GJ & JF stock. Finally, even if the Debtor did

borrow the $125,000 from Flores as part of a stock purchase transaction, there is no legal basis to impose the remedy of rescission.

As Flores correctly states, rescission is an equitable remedy based on the principle that a party shall not unjustly enrich himself at the expense of another party. *Lenel Sys. Intl., Inc. v. Smith*, 106 A.D.3d 1536, 1537 (4th Dept., 2013). Flores also correctly notes that rescission in general is only permitted for material and willful breaches of agreements, or if not willful, so substantial that the failure to perform was substantial and permeated the whole contract. *Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.*, 199 N.Y. 268, 284 (1910). In this case, Flores alleges that there was a substantial and fundamental non-performance by the Debtor given the Debtor's failure to provide consideration for his purchase of the GJ & JF stock. As Flores puts it, "[t]he utter failure of consideration by the Debtor was so substantial that it nullified any and all agreements between the Debtor and Flores, including negating or rescinding the Debtor's alleged purchase of the 50% stock interest in GJ & JF." Brief by Flores and GJ & JF in Support of Dismissal dated January 17, 2018. According to Flores, the "failure of consideration" is the Debtor's failure to make any payments with respect to the 2013 Note.

Flores's theory is unsustainable because there is no evidence that the Debtor defaulted under the 2013 Note. The 2013 Note, which is non-recourse, directs the Debtor to make monthly payments in the amount of $2,083.33, but the payments are not to commence until the first day "after profits are realized." (Plaintiff's Ex. 1). The 2013 Note does not clarify what the term "profits" means. However, it is clear that Flores made the loan to the Debtor in connection with the purchase of the Property by GJ & JF, and that the Property is the sole asset of GJ & JF. The 2013 Note was executed at the same time that GJ & JF purchased the Property, and the proceeds of the 2013 Note were used as part of the down payment GJ & JF made to purchase the Property.

GJ & JF also took out a mortgage for the remainder of the purchase price.  The Property was

then sold to BR Realty, which executed the 2015 Note in favor of GJ & JF as part of the

purchase price and paid off the outstanding mortgage obligation on the Property.  While the term

"profits" would appear to be ambiguous if read outside the context of the transaction taking place

at the same time, the laws of contract construction permit the Court to take into consideration

these other events.

Under New York law, which the parties agree governs the agreements at issue,

the question of whether a written contract is ambiguous is for the Court to decide.  *See In re*

*Seiden Associates, Inc. v. ANC Holdings, Inc*., 959 F.2d 425, 429 (2d Cir. 1992).  In making this

determination:

> [A] court may consider the factual circumstances surrounding the execution of a contract,
> because the court's primary purpose in interpreting the agreement is to determine the
> parties' intentions, and interpreting the contract's terms in a factual vacuum would
> undermine that goal.

*In re Coudert Bros*., 487 B.R. 375, 393 (S.D.N.Y. 2013) (other citations omitted).

In this case, the term "profits" can only mean the profits of GJ & JF.  Based on

the 2013 Note and the Stock Pledge Agreement, the entire transaction between Flores and the

Debtor was for the purpose of buying real property by a jointly owned company, for the benefit

of the jointly owned company and its shareholders.  Flores funded the entire down payment, and

the Debtor agreed to repay Flores for providing the Debtor's share of the down payment once the

company's sole asset generated a profit.  Based on the transaction as a whole, the Court

concludes that until GJ & GF realized a profit, the Debtor was not required to make any

payments on the 2013 Note.

Based on the facts of the case, there is no evidence that GJ & JF could have generated a profit until the Property was sold and BR Realty commenced making payments on the 2015 Note to GJ & JF.  Because GJ & JF never received any payment on the 2015 Note, the Debtor was never obligated to make any payments set forth in the 2013 Note.  Therefore, even if a stock purchase agreement existed between the parties, there would be no legal basis to call for rescission of the transaction.

Under Flores's second theory, he holds 100% of the shares of GJ & JF because he foreclosed on the Debtor's shares in GJ & JF prepetition.   Flores admits that this theory requires a finding that the Debtor defaulted under the 2013 Note and the Stock Pledge Agreement.  Since the Court has already determined that the Debtor did not default under the 2013 Note and the Stock Pledge Agreement, Flores had no legal right to foreclose on the shares pledged by the Debtor.  In addition to having no legal right to foreclose, there is no evidence that Flores took the steps required to effectuate such a foreclosure.  The evidence that does exist supports a finding that the Debtor was still a shareholder of JG & GF as of the date the Property was conveyed from GJ & JF to BR Realty.  The Debtor signed the Contract of Sale of the Property dated March 13, 2015 as President of the Debtor.

Having concluded that Flores and the Debtor each owned 50% of the shares of GJ & JF as of the Petition Date, the Court turns to whether Flores had a perfected lien on the shares owned by the Debtor.  The Trustee recognizes that Flores was granted a security interest in the shares owned by the Debtor as of the Petition Date.  However, the Trustee asserts that Flores never perfected his interest in the shares under New York law, which governs this dispute.  *See In re Kors, Inc*., 819 F.2d 19, 22-23 (2d Cir. 1987).  If the Trustee is correct, then the Trustee,

who assumes the status of a hypothetical lien creditor under 11 U.S.C. § 544(a)(1)[2], can avoid

Flores's unperfected security interest for the benefit of the Debtor's estate.

Flores was granted a security interest in the Debtor's shares of GJ & JF pursuant

to the Security Agreement but because the stock certificates were never prepared, Flores never

obtained possession of the shares pledged to him.  Under Article 9 of the New York Uniform

Commercial Code ("NY U.C.C."), both certificated and uncertificated securities are considered

"investment property."  NY U.C.C.  § 9-102 (a)(49).  NY U.C.C. § 8-102(4) defines a

certificated security as "a security that is represented by a certificate."  NY U.C.C. § 8-102(18)

defines an uncertificated security as "a security that is not represented by a certificate."  A

secured party may perfect its interest in investment property by either (i) filing pursuant to

Article 9 or (ii) obtaining control of the investment property. NY U.C.C. § 9-312 (a), (b); N.Y.

UCC § 9-106.  In this case a U.C.C. financing statement was never filed with the New York

Department of State in connection with the Debtor's pledge of his shares to Flores as collateral

for the 2013 Note.  Therefore, Flores never perfect his security interest by filing in accordance

with Article 9.

Under NY U.C.C. § 9-106, perfection of investment property is made via control

over the investment property as provided in § 8-106.  In turn, § 8-106 provides that a secured

party has control of an uncertificated security if "(1) the uncertificated security is delivered to the

purchaser; or (2) the issuer has agreed that it will comply with instructions originated by the

purchaser without further consent by the registered owner."  Flores did not perfect his interest in

---

[2] 11 U.S.C. § 544(a)(1) grants a bankruptcy trustee the "rights and powers of . . . a creditor that
extends credit to the debtor at the time of the commencement of the case, and that obtains, at
such time and with respect to such credit, a judicial lien on all property on which a creditor on a
simple contract could have obtained such a judicial lien, whether or not such a creditor exists."

the stock by delivery because there was no stock ledger for GJ & JF.  GJ & JF had no method of recording stock ownership, so there is no basis to find that a person other than the Debtor held the stock.   There are also no facts showing that GJ & JF agreed to comply with the instructions of Flores without further consent by the registered owner.  Without such evidence, the Court cannot find that Flores had a perfected lien on the Debtor's stock in GJ $ JF. Therefore, as of the Petition Date, the Trustee, as the hypothetical lien creditor, owned 50% of the shares of GJ & JG, free of any perfected lien or claim asserted by Flores.

### *Analysis*

Having found that Flores and the Debtor each owned 50% of the shares of GJ & JF as of the Petition Date, and that the Trustee's status as hypothetical lien creditor under the Bankruptcy Code renders Flores' security interest in the Debtor's shares as unperfected, the Court will examine each count of the Complaint.

In Count 1, the Plaintiff seeks a declaratory judgment that the Debtor's estate and Flores each own 50% of the 2015 Note, either directly, or indirectly as 50% shareholders of GJ & JF. Based on the discussion above, the Court grants judgment in favor of the Plaintiff on the limited issue that the Debtor's estate owns 50% of the shares of GJ & JF, free of any lien or claim by Flores.  As a 50% shareholder, the Trustee has certain rights with respect to GJ & JF, but the Trustee cannot claim an ownership interest in the 2015 Note or the proceeds of the 2015 Note without seeking additional relief. The Trustee must take further steps to assert his rights as a shareholder of GJ & JF before he can collect any payments made under the 2015 Note.

In Count 2, the Plaintiff seeks entry of a judgment directing BR Realty to make an accounting of all payments made pursuant to the 2015 Note and to turn over to the Plaintiff all payments to be made pursuant to the 2015 Note that are attributable to the Debtor's interest in the 2015 Note. For the same reasons set forth above, the Court cannot direct BR Realty to provide an accounting or to turn over funds belonging to GJ & JF, which is a non-debtor.

In Count 3, the Plaintiff seeks an accounting from GJ & JF and Flores for all payments received pursuant to the 2015 Note and to turn over to the Plaintiff all payments received that are attributable to the Debtor's interest in the 2015 Note, either directly or as an owner of GJ & JF. While the Court has determined that the Debtor owns 50% of the shares of GJ & JF, this determination does not entitle the Plaintiff to the payments received under the 2015 Note, which would be property of GJ & JF. GJ & JF is a separate legal entity and must assert its rights with respect to the 2015 Note. The Trustee's rights are limited to that of a shareholder of GJ & JF under New York law.

In Count 4, the Plaintiff seeks to avoid the Debtor's transfer of his interest in the 2015 Note to Flores. Because the Plaintiff is the Chapter 7 trustee, he stands in the shoes of a hypothetical lien creditor, which status defeats any claim that Flores asserts against the Debtor's interest in the 2015 Note. The fact that Flores is listed as the recipient of the payment under the 2015 Note does not affect the legal status of GJ & JF as the payee. GJ & JF should assert its rights under the 2015 Note first, then the Trustee can commence an action to dissolve GJ & JF in the appropriate forum. However, the bankruptcy estate's interest is limited to that of a 50% shareholder. Flores never had more than an unperfected lien on the Debtor's stock interest, and the Debtor never transferred his interest in the 2015 Note to Flores. Therefore, Count 4 is dismissed.

The relief sought in Count 5 is denied for the same reasons as set forth in the paragraph above. Each transfer to Flores harmed GJ &JF directly, and GJ & JF is not a debtor. Therefore, this cause of action is dismissed.

The relief sought in Count 6 is also denied. Each transfer to Flores harmed GJ & JF. Any post - petition payments made which are being held in escrow are not property of the bankruptcy estate, and belong to GJ & JF.

### *Conclusion*

For the reasons set forth above, the Court shall enter a judgment as follows:

1.  First Cause of Action: A declaratory judgment shall be entered determining that the Trustee and Flores each own 50% of the shares of GJ & JF, and the rest of the relief sought in the First Cause of Action is dismissed.

2. Second Cause of Action: Judgment shall be entered dismissing the Second Cause of Action seeking an accounting from BR Realty of all payments made pursuant to the 2015 Note and turnover of all payments to be made under the 2015 Note.

3. Third Cause of Action: Judgment shall be entered dismissing the Third Cause of Action seeking an accounting from Flores. To the extent the Trustee seeks to enforce his rights as a shareholder of GJ & JF, the Trustee shall take appropriate action in a non-bankruptcy forum.

4. Fourth Cause of Action: Judgment shall be entered dismissing the Fourth Cause of Action against Flores seeking to recover the Debtor's alleged waiver of his interest in the 2015 Note as a preferential transfer. The Debtor had no interest in the 2015 Note other than as a shareholder of GJ & JF.

5. Fifth Cause of Action: Judgment shall be entered dismissing the Fifth Cause of Action seeking to recover payments made by BR Realty and received by GJ & JF or Flores pursuant to the 2015 Note as preferential payments, because the Debtor made no monetary transfers.

6. Sixth Cause of Action: Judgment shall be entered dismissing the Sixth Cause of Action seeking to recover payments made after the Petition Date by BR Realty and received by GJ & JF or Flores pursuant to the 2015 Note as unauthorized post-petition transfers, because the Debtor made no monetary transfers.

The Court shall enter a judgment consistent with this Memorandum Decision.

**Dated: Central Islip, New York**
**April 16, 2018**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**